**FILED**
**U.S. District Court**
District of Kansas

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

JUL **2 0** 2017

Clerk, U.S. District Court
By _____ Deputy Clerk

| | | |
|---|---|---|
| Michael T. Cochran, | ) | Case Number: |
| _____ | ) | 6:17-cv-1168-EFM-KGG |
| Plaintiff,  pro se, | ) | |
| vs. | ) | |
| State of Oklahoma; et. Al.) | | |
| Defendants | ) | |
| _____ ) | | |

**CIVIL COMPLAINT**

Parties to this civil action:

**I.**        **A.** Name of plaintiff: Michael T. Cochran

        Address;        Homeless

    **B.** Defendant:        State of Oklahoma; et.al.

ADDITIONAL DEFENDANTS:

    1) Oklahoma Highway Patrol Trooper Tyler Langston
    2) Unknown  Oklahoma Highway Patrol Trooper #1
    3) Unknown  Oklahoma Highway Patrol Trooper #2
    4) Unknown  Oklahoma Highway Patrol Trooper #3
    5) District Attorney Brian Hermanson
    6) Judge Jennifer Brock

**II.        Jurisdiction:**

This case arises under the following sections of the Constitution of the United States or statute of the United States:

(See 28 U.S.C. § 1331 "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

This case also arises because of violation of the civil or equal rights, privileges, or immunities accorded to citizens of, or persons within the jurisdiction of the United States (28 U.S.C. §1343 (a)  The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1)  To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;(42 USC 1985 (2)... or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;)and (42 USC 1985 (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.)

(2)  To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3)  To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4)  To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

III.        Statement of Facts and Statement of Claim:

**STATEMENT OF FACTS:**

1)      On or about 7/13/2015 Plaintiff was traveling to Wichita, Kansas on his 2014 Honda Ruckus moped pulling a bicycle trailer with his personal property through Oklahoma on State Highway 77 south of Newkirk, Oklahoma from New Orleans, Louisiana.

2)      On the above mentioned date, at the Highway 11 and State Highway 77 intersection, Plaintiff seen an Oklahoma Highway Patrol vehicle parked in the dark off the right hand side (East) of the road facing south on State Highway 77.

3)      After Plaintiff passed through the intersection he observed the Oklahoma Patrol vehicle pull up behind him and turn on his emergency lights. Plaintiff pulled over immediately.

4)      Upon stopping, two Oklahoma State troopers exited the patrol vehicle and approached the Plaintiff. The patrol vehicle operator (Oklahoma Highway Patrol Trooper Tyler Langston) demanded Plaintiff's vehicle registration, proof of insurance and motor vehicle operating license.

5)      Plaintiff surrendered the vehicle registration and proof of insurance as demanded and also handed the officer his Louisiana State Identification card.

6)      Plaintiff did not have a Louisiana driver's license or any other state operator's license.

7)      The officer then stated that the Identification card was not a driver's license and Plaintiff agreed.

8)      The officer then stated that Plaintiff was required to have a driver's license to operate a motor vehicle.

9)      Plaintiff explained that on that particular moped that in the State of Louisiana a driver's license of any kind was not required.

10)     At this time Oklahoma Highway Patrol Trooper Tyler Langston's partner (Unknown  Oklahoma Highway Patrol Trooper #1) whom was riding in the passenger seat of the patrol vehicle began arguing "you still have to have a driver's license" and totally disregarded the Plaintiff's trying to point out that Louisiana law did not require it.

11)     At this point Unknown Oklahoma Highway Patrol Trooper #1 became threatening and told Plaintiff that he could take him to jail and demanded if Plaintiff understood.

12)     Several other Law Enforcement Officers also arrived but did not exit their vehicles.

13)     Plaintiff understood.

14)     Citation was issued (OPERATING MV WITHOUT VALID DRIVERS LICENSE (TR)) and also a warning for no lights on a pull behind trailer.

15)     Plaintiff was released and continued to Wichita, Kansas.

16)     Plaintiff was unable to address the citation or attend court appearance.

17)      Plaintiff later found information on the internet wherein it appears that the State of Oklahoma tried Plaintiff in his absence and found him guilty and also fined him $443.95 (as of 11/17/2016 10:46am) and that case has been sent to collections (3/23/2016)

18)      According to the record, the presiding Judge was Judge Jennifer Brock and the District Attorney was Brian Hermanson

### PERTAINENT LAW;

1) United States Constitution; Article IV; Section 1:
   Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

2) United States Constitution; Article IV; Section 2:

   The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

   A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

   No Person held to Service or Labour in one State, under the Laws thereof, escaping into another, shall, in Consequence of any Law or Regulation therein, be discharged from such Service or Labour, but shall be delivered up on Claim of the Party to whom such Service or Labour may be due.

3) U. S. Constitution; Amendment IX

   The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

4) U. S. Constitution; Amendment X

   The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.

5) U. S. Constitution; Amendment XIV

   Section 1.


   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**LOUISIANA**

6)  Universal Citation: LA Rev Stat § 32:1
    TITLE 32
    MOTOR VEHICLES AND TRAFFIC REGULATION
    CHAPTER 1. LOUISIANA HIGHWAY REGULATORY ACT

    PART I. DEFINITIONS AND GENERAL AUTHORITY

    §1. Definitions
    (38)    "Motorcycle" means every motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground, but excluding a tractor and excluding a motorized bicycle.
    (39)    **"Motor driven cycle" means every motorcycle, including every motor scooter, with a motor of not to exceed five horsepower.**
    (40)    "Motor vehicle" means every vehicle which is self-propelled, and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, but excluding a motorized bicycle. "Motor vehicle" shall also include a "low-speed vehicle" which is a four-wheeled, electric-powered vehicle with a maximum speed of not less than twenty miles per hour but not more than twenty-five miles per hour and is equipped with the minimum motor vehicle equipment appropriate for vehicle safety as required in 49 C.F.R. 571.500.
    (41)    "Motorized bicycle" means a pedal bicycle which may be propelled by human power or helper motor, or by both, with a motor rated no more than one and one-half brake horsepower, a cylinder capacity not exceeding fifty cubic centimeters, an automatic transmission, and which produces a maximum design speed of no more than twenty-five miles per hour on a flat surface.

4)      RS 32:51 — Vehicle license required

        Universal Citation: LA Rev Stat § 32:51

        PART III. GENERAL PROHIBITIONS, PENALTIES

        §51. Vehicle license required


        No person shall operate, or permit to be operated, any motor vehicle upon the highways of this state unless it is registered with the commissioner, the license tax is paid thereon, and it is operated in accordance with the provisions of this Chapter and other laws of this state.

    5)  2012 Louisiana Laws
        Revised Statutes
        TITLE 32 — Motor vehicles and traffic regulation
        RS 32:190 — Safety helmets

Universal Citation: LA Rev Stat § 32:190

SUBPART G. OPERATION OF MOTORCYCLES,

MOTOR-DRIVEN CYCLES AND BICYCLES

§190. Safety helmets

A. No person shall operate or ride upon any motorcycle, motor-driven cycle, or motorized bicycle unless the person is equipped with and is wearing on the head a safety helmet of the type and design manufactured for use by operators of such vehicles, which shall be secured properly with a chin strap while the vehicle is in motion. All such safety helmets shall consist of lining, padding, visor, and chin strap and shall meet such other specifications as shall be established by the commissioner.

B. It shall be unlawful to manufacture, sell, or distribute any protective helmet for use by the operator of a motorcycle, motor driven cycle, or motorized bicycle, or for use by the passenger thereon, unless such protective helmet is of a type and specification approved by the commissioner who shall publish a notice of such approval.

C. Notwithstanding the provisions of this Section, the police authorities of a village, town, city, or parish may issue a permit exempting members of organizations sponsoring, conducting, or participating in parades or other public exhibitions from the provisions of this Section while such members are actually participating in a parade or other public exhibition.

D. This Section does not apply to a person operating or riding in an autocycle if the vehicle is equipped with a roof which meets or exceeds standards for a safety helmet.

E. It shall be unlawful to manufacture, sell, or distribute any protective helmet for use by the operator of a motorcycle, motor driven cycle, or motorized bicycle, or for use by the passenger thereon, unless the manufacturer of the protective helmet obtains and maintains liability insurance of not less than one hundred thousand dollars for each occurrence of liability of the manufacturer for fault in the design, materials, or workmanship of the protective helmet. In addition to any other penalty provided in this Section, the commissioner may prohibit the movement, sale, or distribution of any protective helmet if the manufacturer is not covered by insurance as required by this Subsection.

F. Any person who violates any provision of this Section shall upon conviction be fined fifty dollars which shall include all costs of court. Notwithstanding any contrary provision of law, no other cost or fee shall be assessed against any person for a violation of this Section.

6) TITLE 32 — Motor vehicles and traffic regulation
RS 32:190.1 — Eye protective devices to be worn by motorcyclist; windshield on motorcycle

Universal Citation: LA Rev Stat § 32:190.1

§190.1. Eye protective devices to be worn by motorcyclist; windshield on motorcycle

A. No person shall operate a motorcycle or motor driven cycle unless the person is wearing an eye protective device of a type approved for such use by the secretary, except when the motorcycle or motor driven cycle is equipped with a windshield of sufficient height to afford adequate eye protection that meets the requirements of R.S. 32:358.

B. The secretary shall approve only goggles, face shields, or safety glasses which will meet performance specifications established by him.

C. Eye protective devices used at night shall not be tinted.

D. This Section shall not apply to persons riding within an enclosed cab.

7)      TITLE 32 — Motor vehicles and traffic regulation

RS 32:192 — Riding on motor-driven cycles

Universal Citation: LA Rev Stat § 32:192

§192. Riding on motor-driven cycles

Not more than one person shall be allowed to ride upon a motor-driven cycle.

8)      TITLE 32 — Motor vehicles and traffic regulation

RS 32:345 — Brakes on motor driven cycles

Universal Citation: LA Rev Stat § 32:345

§345. Brakes on motor driven cycles

A. The commissioner is hereby authorized to require an inspection of the brake on any motor driven cycle and to disapprove any such brake which he finds will not comply with the performance ability standard set forth in R.S. 32:342, or which in his opinion is

not so designed or constructed as to insure reasonable and reliable performance in actual use.

B. The commissioner may refuse to register or may suspend or revoke the registration of any vehicle referred to in this Section when he determines that the brake thereon does not comply with the provisions of this Chapter.

C. No person shall operate on any highway of this state any vehicle referred to in this Section if the commissioner has disapproved the brake equipment upon such vehicle or type of vehicle.

**OKLAHOMA;**

9) Title 47. Motor Vehicles

Chapter 1- Definitions of Words and Phrases
Section 1-128 - License to Operate a Motor Vehicle
A. Any valid driver license or permit to operate a motor vehicle issued under the laws of this state including any temporary license or instruction permit, the lawful possession of which by a resident of this state shall be evidence that the resident has been granted the privilege to operate a motor vehicle.

B. Any nonresident's operating privilege as defined in Section 47-1-138 of this title, which is evidenced by the lawful possession of a valid driver license or permit to operate a motor vehicle issued under the laws of another state.

10)    Chapter 1- Definitions of Words and Phrases

Section 1-133.2 - Moped

Cite as: 47 O.S. § 1-133.2 (OSCN 2016)

A "moped" is any motor-driven cycle with a motor which produces not to exceed two brake horsepower and which is not capable of propelling the vehicle at a speed in excess of thirty (30) miles per hour on level ground.  If an internal combustion engine is used, the displacement shall not exceed fifty (50) cubic centimeters, and the moped shall have a power drive system that functions directly or automatically without clutching or shifting by the operator after the drive system is engaged.

11)    Chapter 1- Definitions of Words and Phrases

Section 1-136 - Motor-Driven Cycle

A motor-driven cycle is any motor vehicle having:

1. A power source that:

**a. if the power source is a combustion engine, has a piston or rotor displacement of greater than thirty-five cubic centimeters (35 cu cm) but less than one hundred fifty cubic centimeters (150 cu cm) regardless of the number of chambers in the power source,**

b. if the power source is electric, has a power output of greater than one thousand (1,000) watts; and

2. A seat or saddle for the use of each rider; and

3. Not more than three wheels in contact with the ground.

12)    Chapter 1- Definitions of Words and Phrases

Section 1-135 - Motorcycle

A motorcycle is any motor vehicle having:

1. A seat or saddle for the use of each rider;

2. Not more than three wheels in contact with the ground, but excluding a tractor; and

**3. A combustion engine with a piston or rotor displacement of one hundred fifty cubic centimeters (150 cu cm) or greater.**

13)    Title 47. Motor Vehicles

Chapter 1- Definitions of Words and Phrases

Section 1-133.3 - Motorized Scooter

A. A "motorized scooter" is any vehicle having:

1. Not more than three wheels in contact with the ground;

2. Handlebars and a foot support or seat for the use of the operator;

3. A power source that is capable of propelling the vehicle at a maximum design speed of not more than twenty-five (25) miles per hour on level ground, and:

**a. if the power source is a combustion engine, has a piston or rotor displacement of thirty-five cubic centimeters (35 cu cm) or less regardless of the number of chambers in the power source,**

b. if the power source is electric, has a power output of not more than one thousand (1,000) watts.

B. For purposes of this section, an electric personal assistive mobility device, as defined in Section 1-114A of this title, bicycle, electric-assisted bicycle, or motorized bicycle, as defined in Section 1-104 of this title, shall not be considered a motorized scooter.

14)    Title 47. Motor Vehicles

Chapter 1- Definitions of Words and Phrases

Section 1-138 - Nonresident's Operating Privilege

**The privilege conferred upon a nonresident by the laws of this state pertaining to the operation by such person of a motor vehicle, or the use of a vehicle owned by such person, in this state.**

15)     Title 47. Motor Vehicles

Chapter 1- Definitions of Words and Phrases

Section 1-137 - Nonresident

Every person who is not a resident of this state.

## STATEMENT OF CLAIMS; CLAIM ONE

1) Plaintiff claims that under Louisiana law there was no requirement to have a driver's license on the moped he was using for transportation and travelling for which the conveyance specifications clearly show that it was under 5 horsepower.
2) Plaintiff claims that under the U. S. Constitution; Article IV; Sections 1 and 2 require the State of Oklahoma to recognize and respect the laws of Louisiana for which Plaintiff's conveyance was registered, and his identification showed he was a resident thereof and that Oklahoma laws did not apply to Plaintiff in the registration of his conveyance, or the licensing requirements thereof.
3) Plaintiff claims he was not required to comply with Oklahoma laws and licensing requirements unless he was a resident thereof.
4) Plaintiff claims that the burden of proof that Plaintiff was in the State of Oklahoma longer than required under Oklahoma law to change his licensing requirement to comply with Oklahoma law is on the State of Oklahoma for which they could not nor ever do because Plaintiff was not residing in Oklahoma but only passing through and TRAVELLING to the State of Kansas.
5) Plaintiff claims that the unknown officers mentioned above should have attempted in some way to interfere with and/or prevent the unconstitutional acts committed against Plaintiff but did not do anything but let it happen.
6) Plaintiff claims that the defendants (State of Oklahoma; et. Al.) did engage in a practice of attempting to extort money from Plaintiff in the amount of $443.95 and are now holding his licensing privileges hostage in lieu of payment of these fine and have damaged his credit, reputation, person and property in this extortion attempt.
7) Plaintiff claims he is entitled to monetary damages and other relief.

## STATEMENT OF CLAIMS; CLAIM TWO

1) Plaintiff claims that the above mentioned extortion is also a denial of fundamental rights under the U. S. Constitution; Amendment IX, for which it is long established law that it is a fundamental right to travel and that no state has the right or authority to attach a fee, license or tax a right.

2) Plaintiff claims that under the U. S. Constitution; Amendment X that the states do in fact have the right and authority to regulate the highways, HOWEVER, ONLY SO FAR AS IT DOES NOT CONFLICT WITH THE CONSTITUTIONAL RIGHTS OF U. S. CITIZENS.

3) Plaintiff claims that the U. S. Constitution; Amendment X is not a license for states to abrogate or deny or disparage U. S. Citizens of Constitutional rights whether enumerated or not.

4) Plaintiff claims that states have the authority and right to regulate and require licensing only in such cases wherein the state authorities can prove that the accused has engaged in commerce upon the public highways and/or make a showing that the state has an overwhelming government interest.

5) Plaintiff claims that the burden of proof to show that Plaintiff was engaged in commerce upon the public highways falls upon the state and he has no requirement to prove himself not guilty of a crime.

6) Plaintiff claims, that for the record, HE WAS NOT ENGAGING IN COMMMERCE UPON THE PUBLIC HIGHWAYS.

7) Plaintiff claims that the State of Oklahoma cannot provide proof that they have an overwhelming or compelling State interest in enforcement of the licensing requirements of ANY state whether or not the accused is engaged in commerce or not.

8) Plaintiff claims that while the State of Oklahoma requires a license for "operating a motor vehicle" which is definitive of alleging an act of engaging in commerce upon the public highways that it should also clearly be held that such persons holding a driver's license also be required to hold a business license or permit; HOWEVER, NO SUCH REQUIREMENT EXISTS.

9) Plaintiff offers attached a foregoing brief in support of lack of jurisdiction in support of the foregoing claims as well as additional case law.

10) Plaintiff claims he IS NOT herein attacking his arrest, or conviction, but is seeking damages for the illegal and unconstitutional acts against himself by the State of Oklahoma; et. Al. and would willingly engage in negotiations with the defendants for settlement.

**IV.**        Relief:

Plaintiff seeks compensatory damages

Plaintiff seeks consequential damages

Plaintiff seeks punitive damages

Plaintiff seeks speculative damages

Plaintiff seeks general damages

Plaintiff seeks aggravated damages

Plaintiff claims any and all other damages that the Honorable Court may deem reasonable and prudent.

Plaintiff seeks all legal compensation, court costs, fees or any other legal costs to include his person time

**V.**　　　　Do you claim the wrongs alleged in your complaint are continuing to occur at the present time? **YES.**

**VI.**　　　　Do you claim actual damages for the acts alleged in your complain? **YES.**

**VII.**　　　　Do you claim punitive monetary damages? **YES.**

If you answered yes, state the amounts claimed and reasons you claim you are entitled to recover money damages:

1) Plaintiff's U.S. Constitutional rights have been violated for which he has been injured in his rights, liberties, person, property and life; for which said injury, damages are indeed irreversible and no other remedy exists to make Plaintiff whole nor punish defendants for the wrongs perpetrated against the Plaintiff.
2) Plaintiff seeks damages totaling One and one half million dollars USD in cash.

**VIII.**　　　　Administrative Procedures

　　　　None.

**IX.**　　　　Related litigation:

　　　　Neither this cause, nor a substantially equivalent complaint, was previously filed in this court, and therefore this case may be opened as an original proceeding.

Date
7-20-17

_____
(Signature of Plaintiff)


Michael T. Cochran

Name

Homeless

Address

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates this Honorable United States District Court of District of Kansas  as the place for
proceedings.   *Wichita, Ks,*                    **REQUEST FOR TRIAL BY JURY**

Plaintiff does not demand Trial by Jury at this time.



Signature of Plaintiff


Dated;    *7-20-17*

**BRIEF IN SUPPORT OF COMPLAINT**

NOW, comes the Accused, appearing specially and not generally or voluntarily, but under threat of arrest if he failed to do so, with this "BRIEF IN SUPPORT OF NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION," stating as follows:

ARGUMENT

If ever a judge understood the public's right to use the public roads, it was Justice Tolman of the Supreme Court of the State of Washington. Justice Tolman stated:

"Complete freedom of the highways is so old and well established a blessing that we have forgotten the days of the Robber Barons and toll roads, and yet, under an act like this, arbitrarily administered, the highways may be completely monopolized, if, through lack of interest, the people submit, then they may look to see the most sacred of their liberties taken from them one by one, by more or less rapid encroachment."

Robertson vs. Department of Public Works, 180 Wash 133, 147.

The words of Justice Tolman ring most prophetically in the ears of Citizens throughout the country today as the use of the public roads has been monopolized by the very entity which has been empowered to stand guard over our freedoms, i.e., that of state government.

RIGHTS

The "most sacred of liberties" of which Justice Tolman spoke was personal liberty. The definition of personal liberty is:

"Personal liberty, or the Right to enjoyment of life and liberty, is one of the fundamental or natural Rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from, or dependent on, the U.S. Constitution, which may not be submitted to a vote and may not depend on the outcome of an election. It is one of the most sacred and valuable Rights, as sacred as the Right to private property ... and is regarded as inalienable."

16 C.J.S., Constitutional Law, Sect.202, p.987

This concept is further amplified by the definition of personal liberty:

"Personal liberty largely consists of the Right of locomotion -- to go where and when one pleases -- only so far restrained as the Rights of others may make it necessary for the welfare of all other citizens. The Right of the Citizen to travel upon the public highways and to transport his property thereon, by horse drawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but the common Right which he has under his Right to life, liberty, and the pursuit of happiness. Under this Constitutional guarantee one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's Rights, he will be protected, not only in his person, but in his safe conduct."

II Am.Jur. (1st) Constitutional Law, Sect.329, p.1135

and further ...

"Personal liberty -- consists of the power of locomotion, of changing situations, of removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by due process of law."

Bovier's Law Dictionary, 1914 ed., Black's Law Dictionary, 5th ed.;

Blackstone's Commentary 134;

Hare, Constitution, Pg. 777

Justice Tolman was concerned about the State prohibiting the Citizen from the "most sacred of his liberties," the Right of movement, the Right of moving one's self from place to place without threat of imprisonment, the Right to use the public roads in the ordinary course of life.

When the State allows the formation of a corporation it may control its creation by establishing guidelines (statutes) for its operation (charters). Corporations who use the roads in the course of

business do not use the roads in the ordinary course of life. There is a difference between a corporation and an individual. The United States Supreme Court has stated:

"...We are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for examination on the suit of the State. The individual may stand upon his Constitutional Rights as a Citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to investigation, so far as it may tend to incriminate him. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life, liberty, and property. His Rights are such as the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his Rights are the refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under warrant of law. He owes nothing to the public so long as he does not trespass upon their rights."

"Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that the State, having chartered a corporation to make use of certain franchises, could not in exercise of its sovereignty inquire how those franchises had been employed, and whether they had been abused, and demand the production of corporate books and papers for that purpose."

Hale vs. Hinkel, 201 US 43, 74-75

Corporations engaged in mercantile equity fall under the purview of the State's admiralty jurisdiction, and the public at large must be protected from their activities, as they (the corporations) are engaged in business for profit.

"...Based upon the fundamental ground that the sovereign state has the plenary control of the streets and highways in the exercise of its police power (see police power, infra.), may absolutely prohibit the use of the streets as a place for the prosecution of a private business for gain. They all recognize the fundamental distinction between the ordinary Right of the Citizen to use the streets in the usual way and the use of the streets as a place of business or a main instrumentality of business for private gain. The former is a common Right, the latter is an extraordinary use. As to the former, the legislative power is confined to regulation, as to the latter, it is plenary and extends even to absolute prohibition. Since the use of the streets by a common carrier in the prosecution of its business as such is not a right but a mere license of privilege."

Hadfield vs. Lundin, 98 Wash 516

It will be necessary to review early cases and legal authority in order to reach a lawfully correct theory dealing with this Right or "privilege." We will attempt to reach a sound conclusion as to what is a "Right to use the road" and what is a "privilege to use the road". Once reaching this determination, we shall then apply those positions to modern case decision.

"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."

Miranda vs. Arizona, 384 US 436, 491

and ...

"The claim and exercise of a constitutional Right cannot be converted into a crime."

Miller vs. U.S., 230 F. 486, 489

and ...

"There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights."

Snerer vs. Cullen, 481 F. 946

Streets and highways are established and maintained for the purpose of travel and transportation by the public. Such travel may be for business or pleasure.

"The use of the highways for the purpose of travel and transportation is not a mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived."

Chicago Motor Coach vs. Chicago, 169 NE 22?1;

Ligare vs. Chicago, 28 NE 934;

Boon vs. Clark, 214 SSW 607;

25 Am.Jur. (1st) Highways Sect.163

and ...

"The Right of the Citizen to travel upon the public highways and to transport his property thereon, either by horse drawn carriage or by automobile, is not a mere privilege which a city can prohibit or permit at will, but a common Right which he has under the right to life, liberty, and the pursuit of happiness."

Thompson vs. Smith, 154 SE 579

So we can see that a Citizen has a Right to travel upon the public highways by automobile and the Citizen cannot be rightfully deprived of his Liberty. So where does the misconception that the use of the public road is always and only a privilege come from?

"... For while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or in part, as a place for private gain. For the latter purpose, no person has a vested right to use the highways of the state, but is a privilege or a license which the legislature may grant or withhold at its discretion."

State vs. Johnson, 243 P. 1073;

Cummins vs. Homes, 155 P. 171;

Packard vs. Banton, 44 S.Ct. 256;

Hadfield vs. Lundin, 98 Wash 516

Here the court held that a Citizen has the Right to travel upon the public highways, but that he did not have the right to conduct business upon the highways. On this point of law all authorities are unanimous.

"Heretofore the court has held, and we think correctly, that while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or in part, as a place of business for private gain."

Willis vs. Buck, 263 P. I 982;

Barney vs. Board of Railroad Commissioners, 17 P.2d 82

and ...

"The right of the citizen to travel upon the highway and to transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business for private gain in the running of a stagecoach or omnibus."

State vs. City of Spokane, 186 P. 864

What is this Right of the Citizen which differs so "radically and obviously" from one who uses the highway as a place of business? Who better to enlighten us than Justice Tolman of the Supreme Court of Washington State? In State vs. City of Spokane, supra, the Court also noted a very "radical and obvious" difference, but went on to explain just what the difference is:

"The former is the usual and ordinary right of the Citizen, a common right to all, while the latter is special, unusual, and extraordinary."

and ...

"This distinction, elementary and fundamental in character, is recognized by all the authorities."

State vs. City of Spokane, supra.

This position does not hang precariously upon only a few cases, but has been proclaimed by an impressive array of cases ranging from the state courts to the federal courts.

"the right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain in the running of a stagecoach or omnibus. The former is the usual and ordinary right of the Citizen, a right common to all, while the latter is special, unusual, and extraordinary."

Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781

and ...

"The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business."

Thompson vs. Smith, supra.;

Teche Lines vs. Danforth, Miss., 12 S.2d 784

There is no dissent among various authorities as to this position. (See Am. Jur. [1st] Const. Law, 329 and corresponding Am. Jur. [2nd].)

"Personal liberty -- or the right to enjoyment of life and liberty -- is one of the fundamental or natural rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from nor dependent on the U.S. Constitution. ... It is one of the most sacred and valuable rights [remember the words of Justice Tolman, supra.] as sacred as the right to private property ... and is regarded as inalienable."

16 C.J.S. Const. Law, Sect.202, Pg. 987

As we can see, the distinction between a "Right" to use the public roads and a "privilege" to use the public roads is drawn upon the line of "using the road as a place of business" and the various state courts have held so. But what have the U.S. Courts held on this point?

"First, it is well established law that the highways of the state are public property, and their primary and preferred use is for private purposes, and that their use for purposes of gain is special and extraordinary which, generally at least, the legislature may prohibit or condition as it sees fit."

Stephenson vs. Rinford, 287 US 251;

Pachard vs Banton, 264 US 140, and cases cited;

Frost and F. Trucking Co. vs. Railroad Commission, 271 US 592;

Railroad commission vs. Inter-City Forwarding Co., 57 SW.2d 290;

Parlett Cooperative vs. Tidewater Lines, 164 A. 313

So what is a privilege to use the roads? By now it should be apparent even to the "learned" that an attempt to use the road as a place of business is a privilege. The distinction must be drawn between …

1.Travelling upon and transporting one's property upon the public roads, which is our Right; and …

2.Using the public roads as a place of business or a main instrumentality of business, which is a privilege.

"[The roads] … are constructed and maintained at public expense, and no person therefore, can insist that he has, or may acquire, a vested right to their use in carrying on a commercial business."

Ex Parte Sterling, 53 SW.2d 294;

Barney vs. Railroad Commissioners, 17 P.2d 82;

Stephenson vs. Binford, supra.

"When the public highways are made the place of business the state has a right to regulate their use in the interest of safety and convenience of the public as well as the preservation of the highways."

Thompson vs. Smith, supra.

"[The state's] right to regulate such use is based upon the nature of the business and the use of the highways in connection therewith."

Ibid.

"We know of no inherent right in one to use the highways for commercial purposes. The highways are primarily for the use of the public, and in the interest of the public, the state may prohibit or regulate ... the use of the highways for gain."

Robertson vs. Dept. of Public Works, supra.

There should be considerable authority on a subject as important a this deprivation of the liberty of the individual "using the roads in the ordinary course of life and business." However, it should be noted that extensive research has not turned up one case or authority acknowledging the state's power to convert the individual's right to travel upon the public roads into a "privilege."

Therefore, it is concluded that the Citizen does have a "Right" to travel and transport his property upon the public highways and roads and the exercise of this Right is not a "privilege."

DEFINITIONS

In order to understand the correct application of the statute in question, we must first define the terms used in connection with this point of law. As will be shown, many terms used today do not, in their legal context, mean what we assume they mean, thus resulting in the misapplication of statutes in the instant case.

AUTOMOBILE AND MOTOR VEHICLE

There is a clear distinction between an automobile and a motor vehicle. An automobile has been defined as:

"The word `automobile' connotes a pleasure vehicle designed for the transportation of persons on highways."

American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200

While the distinction is made clear between the two as the courts have stated:

"A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons for which remuneration is received."

International Motor Transit Co. vs. Seattle, 251 P. 120

The term `motor vehicle' is different and broader than the word `automobile.'"

City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App. 232

The distinction is made very clear in Title 18 USC 31:

"Motor vehicle" means every description or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, or passengers and property.

"Used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other considerations, or directly or indirectly in connection with any business, or other undertaking intended for profit.

Clearly, an automobile is private property in use for private purposes, while a motor vehicle is a machine which may be used upon the highways for trade, commerce, or hire.

TRAVEL

The term "travel" is a significant term and is defined as:

"The term `travel' and `traveler' are usually construed in their broad and general sense ... so as to include all those who rightfully use the highways viatically (when being reimbursed for expenses) and who have occasion to pass over them for the purpose of business, convenience, or pleasure."

25 Am.Jur. (1st) Highways, Sect.427, Pg. 717

"Traveler -- One who passes from place to place, whether for pleasure, instruction, business, or health."

Locket vs. State, 47 Ala. 45;

Bovier's Law Dictionary, 1914 ed., Pg. 3309

"Travel -- To journey or to pass through or over; as a country district, road, etc. To go from one place to another, whether on foot, or horseback, or in any conveyance as a train, an automobile, carriage, ship, or aircraft; Make a journey."

Century Dictionary, Pg. 2034

Therefore, the term "travel" or "traveler" refers to one who uses a conveyance to go from one place to another, and included all those who use the highways as a matter of Right.

Notice that in all these definitions, the phrase "for hire" never occurs. This term "travel" or "traveler" implies, by definition, one who uses the road as a means to move from one place to another.

Therefore, one who uses the road in the ordinary course of life and business for the purpose of travel and transportation is a traveler.

DRIVER

The term "driver" in contradistinction to "traveler," is defined as:

"Driver -- One employed in conducting a coach, carriage, wagon, or other vehicle ..."

Bovier's Law Dictionary, 1914 ed., Pg. 940

Notice that this definition includes one who is "employed" in conducting a vehicle. It should be self-evident that this individual could not be "travelling" on a journey, but is using the road as a place of business.

OPERATOR

Today we assume that a "traveler" is a "driver," and a "driver" is an "operator." However, this is not the case.

"It will be observed from the language of the ordinance that a distinction is to be drawn between the terms `operator' and `driver'; the `operator' of the service car being the person who is licensed to have the car on the streets in the business of carrying passengers for hire; while the `driver' is the one who actually drives the car. However, in the actual prosecution of business, it was possible for the same person to be both "operator" and "driver."

Newbill vs. Union Indemnity Co., 60 SE.2d 658

To further clarify the definition of an "operator" the court observed that this was a vehicle "for hire" and that it was in the business of carrying passengers.

This definition would seem to describe a person who is using the road as a place of business, or in other words, a person engaged in the "privilege" of using the road for gain.

This definition, then, is a further clarification of the distinction mentioned earlier, and therefore:

1.Travelling upon and transporting one's property upon the public roads as a matter of Right meets the definition of a traveler.

2.Using the road as a place of business as a matter of privilege meets the definition of a driver or an operator or both.

TRAFFIC

Having defined the terms "automobile," "motor vehicle," "traveler," "driver," and "operator," the next term to define is "traffic":

"... Traffic thereon is to some extent destructive, therefore, the prevention of unnecessary duplication of auto transportation service will lengthen the life of the highways or reduce the cost of maintenance, the revenue derived by the state ... will also tend toward the public welfare by producing at the expense of those operating for private gain, some small part of the cost of repairing the wear ..."

Northern Pacific R.R. Co. vs. Schoenfeldt, 213 P. 26

Note: In the above, Justice Tolman expounded upon the key of raising revenue by taxing the "privilege" to use the public roads "at the expense of those operating for gain."

In this case, the word "traffic" is used in conjunction with the unnecessary Auto Transportation Service, or in other words, "vehicles for hire." The word "traffic" is another word which is to be strictly construed to the conducting of business.

"Traffic -- Commerce, trade, sale or exchange of merchandise, bills, money, or the like. The passing of goods and commodities from one person to another for an equivalent in goods or money ..."

Bovier's Law Dictionary, 1914 ed., Pg. 3307

Here again, notice that this definition refers to one "conducting business." No mention is made of one who is traveling in his automobile. This definition is of one who is engaged in the passing of a commodity or goods in exchange for money, i.e .., vehicles for hire.

Furthermore, the words "traffic" and "travel" must have different meanings which the courts recognize. The difference is recognized in Ex Parte Dickey, supra:

"...in addition to this, cabs, hackney coaches, omnibuses, taxicabs, and hacks, when unnecessarily numerous, interfere with the ordinary traffic and travel and obstruct them."

The court, by using both terms, signified its recognition of a distinction between the two. But, what was the distinction? We have already defined both terms, but to clear up any doubt:

"The word `traffic' is manifestly used here in secondary sense, and has reference to the business of transportation rather than to its primary meaning of interchange of commodities."

Allen vs. City of Bellingham, 163 P. 18

Here the Supreme Court of the State of Washington has defined the word "traffic" (in either its primary or secondary sense) in reference to business, and not to mere travel! So it is clear that the term "traffic" is business related and therefore, it is a "privilege." The net result being that "traffic" is brought under the (police) power of the legislature. The term has no application to one who is not using the roads as a place of business.

LICENSE

It seems only proper to define the word "license," as the definition of this word will be extremely important in understanding the statutes as they are properly applied:

"The permission, by competent authority to do an act which without permission, would be illegal, a trespass, or a tort."

People vs. Henderson, 218 NW.2d 2, 4

"Leave to do a thing which licensor could prevent."

Western Electric Co. vs. Pacent Reproducer Corp., 42 F.2d 116, 118

In order for these two definitions to apply in this case, the state would have to take up the position that the exercise of a Constitutional Right to use the public roads in the ordinary course of life and business is illegal, a trespass, or a tort, which the state could then regulate or prevent.

This position, however, would raise magnitudinous Constitutional questions as this position would be diametrically opposed to fundamental Constitutional Law. (See "Conversion of a Right to a Crime," infra.)

In the instant case, the proper definition of a "license" is:

"a permit, granted by an appropriate governmental body, generally for consideration, to a person, firm, or corporation, to pursue some occupation or to carry on some business which is subject to regulation under the police power."

Rosenblatt vs. California State Board of Pharmacy, 158 P.2d 199, 203

This definition would fall more in line with the "privilege" of carrying on business on the streets.

Most people tend to think that "licensing" is imposed by the state for the purpose of raising revenue, yet there may well be more subtle reasons contemplated; for when one seeks permission from someone to do something he invokes the jurisdiction of the licensor which, in this case, is the state. In essence, the licensee may well be seeking to be regulated by the licensor.

"A license fee is a charge made primarily for regulation, with the fee to cover costs and expenses of supervision or regulation."

State vs. Jackson, 60 Wisc.2d 700; 211 NW.2d 480, 487

The fee is the price; the regulation or control of the licensee is the real aim of the legislation.

Are these licenses really used to fund legitimate government, or are they nothing more than a subtle introduction of police power into every facet of our lives? Have our "enforcement agencies" been diverted from crime prevention, perhaps through no fault of their own, instead now busying themselves as they "check" our papers to see that all are properly endorsed by the state?

How much longer will it be before we are forced to get a license for our lawn mowers, or before our wives will need a license for her blender or mixer? They all have motors on them and the state can always use the revenue.

POLICE POWER

The confusion of the police power with the power of taxation usually arises in cases where the police power has affixed a penalty to a certain act, or where it requires licenses to be obtained and a certain sum be paid for certain occupations. The power used in the instant case cannot, however, be the power of taxation since an attempt to levy a tax upon a Right would be open to Constitutional objection. (See "taxing power," infra.)

Each law relating to the use of police power must ask three questions:

1."Is there threatened danger?

2.Does a regulation involve a Constitutional Right?

3.Is this regulation reasonable?"

People vs. Smith, 108 Am.St.Rep. 715;

Bovier's Law Dictionary, 1914 ed., under "Police Power"

When applying these three questions to the statute in question, some very important issues emerge.

First, "is there a threatened danger" in the individual using his automobile on the public highways, in the ordinary course of life and business?

The answer is No! There is nothing inherently dangerous in the use of an automobile when it is carefully managed. Their guidance, speed, and noise are subject to a quick and easy control, under a competent and considerate manager, it is as harmless on the road as a horse and buggy.

It is the manner of managing the automobile, and that alone, which threatens the safety of the public. The ability to stop quickly and to respond quickly to guidance would seem to make the automobile one of the least dangerous conveyances. (See Yale Law Journal, December, 1905.)

"The automobile is not inherently dangerous."

Cohens vs. Meadow, 89 SE 876;

Blair vs. Broadmore, 93 SE 532

To deprive all persons of the Right to use the road in the ordinary course of life and business, because one might, in the future, become dangerous, would be a deprivation not only of the Right to travel, but also the Right to due process. (See "Due Process," infra.)

Next; does the regulation involve a Constitutional Right?

This question has already been addressed and answered in this brief, and need not be reinforced other than to remind this Court that this Citizen does have the Right to travel upon the public highway by automobile in the ordinary course of life and business. It can therefore be concluded that this regulation does involve a Constitutional Right.

The third question is the most important in this case. "Is this regulation reasonable?"

The answer is No! It will be shown later in "Regulation," infra., that this licensing statute is oppressive and could be effectively administered by less oppressive means.

Although the Fourteenth Amendment does not interfere with the proper exercise of the police power, in accordance with the general principle that the power must be exercised so as not to invade unreasonably the rights guaranteed by the United States Constitution, it is established beyond question that every state power, including the police power, is limited by the Fourteenth Amendment (and others) and by the inhibitions there imposed.

Moreover, the ultimate test of the propriety of police power regulations must be found in the Fourteenth Amendment, since it operates to limit the field of the police power to the extent of preventing the enforcement of statutes in denial of Rights that the Amendment protects. (See Parks vs. State, 64 NE 682.)

"With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority."

Connolly vs. Union Sewer Pipe Co., 184 US 540;

Lafarier vs. Grand Trunk R.R. Co., 24 A. 848;

O'Neil vs. Providence Amusement Co., 108 A. 887

"The police power of the state must be exercised in subordination to the provisions of the U.S. Constitution."

Bacahanan vs. Wanley, 245 US 60;

Panhandle Eastern Pipeline Co. vs. State Highway Commission, 294 US 613

"It is well settled that the Constitutional Rights protected from invasion by the police power, include Rights safeguarded both by express and implied prohibitions in the Constitutions."

Tiche vs. Osborne, 131 A. 60

"As a rule, fundamental limitations of regulations under the police power are found in the spirit of the Constitutions, not in the letter, although they are just as efficient as if expressed in the clearest language."

Mehlos vs. Milwaukee, 146 NW 882

As it applies in the instant case, the language of the Fifth Amendment is clear:

"No person shall be ... deprived of Life, Liberty, or Property without due process of law."

As has been shown, the courts at all levels have firmly established an absolute Right to travel.

In the instant case, the state, by applying commercial statutes to all entities, natural and artificial persons alike, has deprived this free and natural person of the Right of Liberty, without cause and without due process of law.

DUE PROCESS

"The essential elements of due process of law are ... Notice and The Opportunity to defend."

Simon vs. Craft, 182 US 427

Yet, not one individual has been given notice of the loss of his/her Right, let alone before signing the license (contract). Nor was the Citizen given any opportunity to defend against the loss of his/her right to travel, by automobile, on the highways, in the ordinary course of life and business. This amounts to an arbitrary deprivation of Liberty.

"There should be no arbitrary deprivation of Life or Liberty ..."

Barbour vs. Connolly, 113 US 27, 31;

Yick Wo vs. Hopkins, 118 US 356

and ...

"The right to travel is part of the Liberty of which a citizen cannot deprived without due process of law under the Fifth Amendment. This Right was emerging as early as the Magna Carta."

Kent vs. Dulles, 357 US 116 (1958)

The focal point of this question of police power and due process must balance upon the point of making the public highways a safe place for the public to travel. If a man travels in a manner that creates actual damage, an action would lie (civilly) for recovery of damages. The state could then also proceed against the individual to deprive him of his Right to use the public highways, for cause. This process would fulfill the due process requirements of the Fifth Amendment while at the same time insuring that Rights guaranteed by the U.S. Constitution and the state constitutions would be protected.

But unless or until harm or damage (a crime) is committed, there is no cause for interference in the private affairs or actions of a Citizen.

One of the most famous and perhaps the most quoted definitions of due process of law, is that of Daniel Webster in his Dartmouth College Case (4 Wheat 518), in which he declared that by due process is meant:

"a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial."

See also State vs. Strasburg, 110 P. 1020;

Dennis vs. Moses, 52 P. 333

Somewhat similar is the statement that is a rule as old as the law that:

"no one shall be personally bound (restricted) until he has had his day in court,"

by which is meant, until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity lacks all the attributes of a judicial determination; it is judicial usurpation and it is oppressive and can never be upheld where it is fairly administered. (12 Am.Jur. [1st] Const. Law, Sect. 573, Pg. 269)

Note: This sounds like the process used to deprive one of the "privilege" of operating a motor vehicle "for hire." It should be kept in mind, however, that we are discussing the arbitrary deprivation of the Right to use the road that all citizens have "in common."

The futility of the state's position can be most easily observed in the 1959 Washington Attorney General's opinion on a similar issue:

"The distinction between the Right of the Citizen to use the public highways for private, rather than commercial purposes is recognized ..."

and ...

Page **33** of **48**

"Under its power to regulate private uses of our highways, our legislature has required that motor vehicle operators be licensed (I.C. 49-307). Undoubtedly, the primary purpose of this requirement is to insure, as far as possible, that all motor vehicle operators will be competent and qualified, thereby reducing the potential hazard or risk of harm, to which other users of the highways might otherwise be subject. But once having complied with this regulatory provision, by obtaining the required license, a motorist enjoys the privilege of travelling freely upon the highways ..."

Washington A.G.O. 59-60 No. 88, Pg. 11

This alarming opinion appears to be saying that every person using an automobile as a matter of Right, must give up the Right and convert the Right into a privilege. This is accomplished under the guise of regulation. This statement is indicative of the insensitivity, even the ignorance, of the government to the limits placed upon governments by and through the several constitutions.

This legal theory may have been able to stand in 1959; however, as of 1966, in the United States Supreme Court decision in Miranda, even this weak defense of the state's actions must fall.

"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."

Miranda vs. Arizona, 384 US 436, 491

Thus the legislature does not have the power to abrogate the Citizen's Right to travel upon the public roads, by passing legislation forcing the citizen to waive his Right and convert that Right into a privilege. Furthermore, we have previously established that this "privilege" has been defined as applying only to those who are "conducting business in the streets" or "operating for-hire vehicles."

The legislature has attempted (by legislative fiat) to deprive the Citizen of his Right to use the roads in the ordinary course of life and business, without affording the Citizen the safeguard of due process of law. This has been accomplished under supposed powers of regulation.

REGULATION

"In addition to the requirement that regulations governing the use of the highways must not be violative of constitutional guarantees, the prime essentials of such regulation are reasonableness, impartiality, and definiteness or certainty."

25 Am.Jur. (1st) Highways, Sect. 260

and ...

"Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right and one carried on by government sufferance of permission."

Davis vs. Massachusetts, 167 US 43;

Pachard vs. Banton, supra.

One can say for certain that these regulations are impartial since they are being applied to all, even though they are clearly beyond the limits of the legislative powers. However, we must consider whether such regulations are reasonable and non-violative of constitutional guarantees.

First, let us consider the reasonableness of this statute requiring all persons to be licensed (presuming that we are applying this statute to all persons using the public roads). In determining the reasonableness of the statute we need only ask two questions:

1.Does the statute accomplish its stated goal?

The answer is No!

The attempted explanation for this regulation "to insure the safety of the public by insuring, as much as possible, that all are competent and qualified."

However, one can keep his license without retesting, from the time he/she is first licensed until the day he/she dies, without regard to the competency of the person, by merely renewing said license before it expires. It is therefore possible to completely skirt the goal of this attempted regulation, thus proving that this regulation does not accomplish its goal.

Furthermore, by testing and licensing, the state gives the appearance of underwriting the competence of the licensees, and could therefore be held liable for failures, accidents, etc. caused by licensees.

2.Is the statute reasonable?

The answer is No!

This statute cannot be determined to be reasonable since it requires to the Citizen to give up his or her natural Right to travel unrestricted in order to accept the privilege. The purported goal of this statute could be met by much less oppressive regulations, i.e., competency tests and certificates of competency before using an automobile upon the public roads. (This is exactly the situation in the aviation sector.)

But isn't this what we have now?

The answer is No! The real purpose of this license is much more insidious. When one signs the license, he/she gives up his/her Constitutional Right to travel in order to accept and exercise a privilege. After signing the license, a quasi-contract, the Citizen has to give the state his/her consent to be prosecuted for constructive crimes and quasi-criminal actions where there is no harm done and no damaged property.

These prosecutions take place without affording the Citizen of their Constitutional Rights and guarantees such a the Right to a trial by jury of twelve persons and the Right to counsel, as well as the normal safeguards such as proof of intent and a corpus dilecti and a grand jury indictment. These unconstitutional prosecutions take place because the Citizen is exercising a privilege and has given his/her "implied consent" to legislative enactments designed to control interstate commerce, a regulatable enterprise under the police power of the state.

We must now conclude that the Citizen is forced to give up Constitutional guarantees of "Right" in order to exercise his state "privilege" to travel upon the public highways in the ordinary course of life and business.

SURRENDER OF RIGHTS

A Citizen cannot be forced to give up his/her Rights in the name of regulation.

Page 36 of 48

"... the only limitations found restricting the right of the state to condition the use of the public highways as a means of vehicular transportation for compensation are (1) that the state must not exact of those it permits to use the highways for hauling for gain that they surrender any of their inherent U.S. Constitutional Rights as a condition precedent to obtaining permission for such use ..."

Riley vs. Laeson, 142 So. 619;

Stephenson vs. Binford, supra.

If one cannot be placed in a position of being forced to surrender Rights in order to exercise a privilege, how much more must this maxim of law, then, apply when one is simply exercising (putting into use) a Right?

Hoke vs. Henderson, 15 NC 15

and ...

"We find it intolerable that one Constitutional Right should have to be surrendered in order to assert another."

Simons vs. United States, 390 US 389

Since the state requires that one give up Rights in order to exercise the privilege of driving, the regulation cannot stand under the police power, due process, or regulation, but must be exposed as a statute which is oppressive and one which has been misapplied to deprive the Citizen of Rights guaranteed by the United States Constitution and the state constitutions.

TAXING POWER

"Any claim that this statute is a taxing statute would be immediately open to severe Constitutional objections. If it could be said that the state had the power to tax a Right, this would enable the state to destroy Rights guaranteed by the constitution through the use of oppressive taxation. The question

herein, is one of the state taxing the Right to travel by the ordinary modes of the day, and whether this is a legislative object of the state taxation.

The views advanced herein are neither novel nor unsupported by authority. The question of taxing power of the states has been repeatedly considered by the Supreme Court. The Right of the state to impede or embarrass the Constitutional operation of the U.S. Government or the Rights which the Citizen holds under it, has been uniformly denied."

McCulloch vs. Maryland, 4 Wheat 316

The power to tax is the power to destroy, and if the state is given the power to destroy Rights through taxation, the framers of the Constitution wrote that document in vain.

"... It may be said that a tax of one dollar for passing through the state cannot sensibly affect any function of government or deprive a Citizen of any valuable Right. But if a state can tax ... a passenger of one dollar, it can tax him a thousand dollars."

Crandall vs. Nevada, 6 Wall 35, 46

and ...

"If the Right of passing through a state by a Citizen of the United States is one guaranteed by the Constitution, it must be sacred from state taxation."

Ibid., Pg. 47

Therefore, the Right of travel must be kept sacred from all forms of state taxation and if this argument is used by the state as a defense of the enforcement of this statute, then this argument also must fail.

CONVERSION OF A RIGHT TO A CRIME

As previously demonstrated, the Citizen has the Right to travel and to transport his property upon the public highways in the ordinary course of life and business. However, if one exercises this Right to travel

(without first giving up the Right and converting that Right into a privilege) the Citizen is by statute, guilty of a crime. This amounts to converting the exercise of a Constitutional Right into a crime.

Recall the Miller vs. U.S. and Snerer vs. Cullen quotes from Pg. 5, and:

"The state cannot diminish Rights of the people."

Hurtado vs. California, 110 US 516

and ...

"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."

Miranda, supra.

Indeed, the very purpose for creating the state under the limitations of the constitution was to protect the rights of the people from intrusion, particularly by the forces of government.

So we can see that any attempt by the legislature to make the act of using the public highways as a matter of Right into a crime, is void upon its face.

Any person who claims his Right to travel upon the highways, and so exercises that Right, cannot be tried for a crime of doing so. And yet, this Freeman stands before this court today to answer charges for the "crime" of exercising his Right to Liberty. As we have already shown, the term "drive" can only apply to those who are employed in the business of transportation for hire. It has been shown that freedom includes the Citizen's Right to use the public highways in the ordinary course of life and business without license or regulation by the police powers of the state.

CONCLUSION

It is the duty of the court to recognize the substance of things and not the mere form.

"The courts are not bound by mere form, nor are they to be misled by mere pretenses. They are at liberty -- indeed they are under a solemn duty -- to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purported to have been enacted to protect ... the public safety, has no real or substantial relation to those objects or is a palpable invasion of Rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

Mulger vs. Kansas, 123 US 623, 661

and ...

"It is the duty of the courts to be watchful for the Constitutional rights of the citizen and against any stealthy encroachments thereon."

Boyd vs. United States, 116 US 616

The courts are duty bound to recognize and stop the stealthy encroachments which have been made upon the Citizen's Right to travel and to use the roads to transport his property in the "ordinary course of life and business." (Hadfield, supra.)

Further, the court must recognize that the Right to travel is part of the Liberty of which a Citizen cannot be deprived without specific cause and without the due process of law guaranteed in the Fifth Amendment. (Kent, supra.)

The history of this invasion of the Citizen's Right to use the public highways shows clearly that the legislature simply found a heretofore untapped source of revenue, got greedy, and attempted to enforce a statute in an unconstitutional manner upon those free and natural individuals who have a Right to travel upon the highways. This was not attempted in an outright action, but in a slow, meticulous, calculated encroachment upon the Citizen's Right to travel.

This position must be accepted unless the prosecutor can show his authority for the position that the "use of the road in the ordinary course of life and business" is a privilege.

To rule in any other manner, without clear authority for an adverse ruling, will infringe upon fundamental and basic concepts of Constitutional law. This position, that a Right cannot be regulated under any guise, must be accepted without concern for the monetary loss of the state.

"Disobedience or evasion of a Constitutional Mandate cannot be tolerated, even though such disobedience may, at least temporarily, promote in some respects the best interests of the public."

Slote vs. Examination, 112 ALR 660

and ...

"Economic necessity cannot justify a disregard of Constitutional guarantee."

Riley vs. Carter, 79 ALR 1018;

16 Am.Jur. (2nd), Const. Law, Sect. 81

and ...

"Constitutional Rights cannot be denied simply because of hostility to their assertions and exercise; vindication of conceded Constitutional Rights cannot be made dependent upon any theory that it is less expensive to deny them than to afford them."

Watson vs. Memphis, 375 US 526

Therefore, the Court's decision in the instant case must be made without the issue of cost to the state being taken into consideration, as that issue is irrelevant. The state cannot lose money that it never had a right to demand from the Sovereign People.

Finally, we come to the issue of public policy. It could be argued that the licensing scheme of all persons is a matter of public policy. However, if this argument is used, it too must fail, as:

"No public policy of a state can be allowed to override the positive guarantees of the U.S. Constitution."

16 Am.Jur. (2nd), Const. Law, Sect. 70

So even public policy cannot abrogate this Citizen's Right to travel and to use the public highways in the ordinary course of life and business. Therefore, it must be concluded that:

"We have repeatedly held that the legislature may regulate the use of the highways for carrying on business for private gain and that such regulation is a valid exercise of the police power."

Northern Pacific R.R. Co., supra.

and ...

"The act in question is a valid regulation, and as such is binding upon all who use the highway for the purpose of private gain."

Ibid.

Any other construction of this statute would render it unconstitutional as applied to this Citizen or any Citizen. The Accused therefore moves this court to dismiss the charge against him, with prejudice.

June 10, 1986.

This ends the legal brief.

In addition:

Since no notice is given to people applying for driver's (or other) licenses that they have a perfect right to use the roads without any permission, and that they surrender valuable rights by taking on the regulation system of licensure, the state has committed a massive construction fraud. This occurs when any person is told that they must have a license in order to use the public roads and highways.

The license, being a legal contract under which the state is empowered with policing powers, is only valid when the licensee takes on the burdens of the contract and bargains away his or her rights knowingly, intentionally, and voluntarily.

Few know that the driver's license is a contract without which the police are powerless to regulate the people's actions or activities.

Few (if any) licensees intentionally surrender valuable rights. They are told that they must have the license. As we have seen, this is not the case.

No one in their right mind voluntarily surrenders complete liberty and accepts in its place a set of regulations.

"The people never give up their liberties but under some delusion."

Edmund Burke, (1784)

ADDITIONAL CASE LAW

"No state shall convert a liberty into a license, and charge a fee therefore." (Murdock v. Pennsylvania, 319 U.S. 105)

"If the State converts a right (liberty) into a privilege, the citizen can ignore the license and fee and engage in the right (liberty) with impunity." (Shuttlesworth v. City of Birmingham, Alabama, 373 U.S. 262)

The U.S. Supreme Court has ruled in Murdock v. Pennsylvania, 319 U.S. 105 (1943) that such licenses are illegal. Furthermore, the U.S. Supreme Court has ruled in Shuttlesworth v. City of Birmingham, 373 U.S. 262 (1963) that citizens "can ignore the license and fee and engage in the right (liberty) with impunity."

"The right of a citizen to travel upon the public highways and to transport his property thereon, by horsedrawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but a common right which he has under his right to life, liberty and the pursuit of happiness. Under this constitutional guaranty one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's rights, he will be protected, not only in his person, but in his safe conduct."

Thompson v.Smith, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135 "The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." –

Thompson vs. Smith, supra.; Teche Lines vs. Danforth, Miss., 12 S.2d 784 "... the right of the citizen to drive on a public street with freedom from police interference... is a fundamental constitutional right" - White, 97 Cal.App.3d.141, 158 Cal.Rptr. 562, 566-67 (1979) "citizens have a right to drive upon the public streets of the District of Columbia or any other city absent a constitutionally sound reason for limiting their access."

Caneisha Mills v. D.C. 2009 "The use of the automobile as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the RIGHT to use an automobile on the public highways partakes of the nature of a liberty within the meaning of the Constitutional guarantees. . ."

Berberian v. Lussier (1958) 139 A2d 869, 872, See also: Schecter v. Killingsworth, 380 P.2d 136, 140; 93 Ariz. 273 (1963). "The right to operate a motor vehicle [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions."

Adams v. City of Pocatello, 416 P.2d 46, 48; 91 Idaho 99 (1966). "A traveler has an equal right to employ an automobile as a means of transportation and to occupy the public highways with other vehicles in common use."

Campbell v. Walker, 78 Atl. 601, 603, 2 Boyce (Del.) 41. "The owner of an automobile has the same right as the owner of other vehicles to use the highway,* * * A traveler on foot has the same right to the use of the public highways as an automobile or any other vehicle."

Simeone v. Lindsay, 65 Atl. 778, 779; Hannigan v. Wright, 63 Atl. 234, 236. "The RIGHT of the citizen to DRIVE on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality is a FUNDAMENTAL CONSTITUTIONAL RIGHT which must be protected by the courts." People v. Horton 14 Cal. App. 3rd 667 (1971) "The right to make use

of an automobile as a vehicle of travel long the highways of the state, is no longer an open question. The owners thereof have the same rights in the roads and streets as the drivers of horses or those riding a bicycle or traveling in some other vehicle."

House v. Cramer, 112 N.W. 3; 134 Iowa 374; Farnsworth v. Tampa Electric Co. 57 So. 233, 237, 62 Fla. 166. "The automobile may be used with safety to others users of the highway, and in its proper use upon the highways there is an equal right with the users of other vehicles properly upon the highways. The law recognizes such right of use upon general principles.

Brinkman v Pacholike, 84 N.E. 762, 764, 41 Ind. App. 662, 666. "The law does not denounce motor carriages, as such, on public ways. They have an equal right with other vehicles in common use to occupy the streets and roads. It is improper to say that the driver of the horse has rights in the roads superior to the driver of the automobile. Both have the right to use the easement."

Indiana Springs Co. v. Brown, 165 Ind. 465, 468. U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary Copy and Share Freely YHVH.name 2 2 "A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle." Schlesinger v. City of Atlanta, 129 S.E. 861, 867, 161 Ga. 148, 159;

Holland v. Shackelford, 137 S.E. 2d 298, 304, 220 Ga. 104; Stavola v. Palmer, 73 A.2d 831, 838, 136 Conn. 670 "There can be no question of the right of automobile owners to occupy and use the public streets of cities, or highways in the rural districts." Liebrecht v. Crandall, 126 N.W. 69, 110 Minn. 454, 456 "The word 'automobile' connotes a pleasure vehicle designed for the transportation of persons on highways."

-American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200 Motor Vehicle: 18 USC Part 1 Chapter 2 section 31 definitions: "(6) Motor vehicle. – The term "motor vehicle" means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways..." 10) The term "used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit. "A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons for which remuneration is received."

-International Motor Transit Co. vs. Seattle, 251 P. 120 The term 'motor vehicle' is different and broader than the word 'automobile.'"

-City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App. 232 "Thus self-driven vehicles are classified according to the use to which they are put rather than according to the means by which they are propelled" – Ex Parte Hoffert, 148 NW 20 "

The Supreme Court, in Arthur v. Morgan, 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825, held that carriages were properly classified as household effects, and we see no reason that automobiles should not be similarly disposed of."

Hillhouse v United States, 152 F. 163, 164 (2nd Cir. 1907). "...a citizen has the right to travel upon the public highways and to transport his property thereon..." State vs. Johnson, 243 P. 1073; Cummins vs.

Homes, 155 P. 171; Packard vs. Banton, 44 S.Ct. 256; Hadfield vs. Lundin, 98 Wash 516, Willis vs. Buck, 263 P. I 982;

Barney vs. Board of Railroad Commissioners, 17 P.2d 82 "The use of the highways for the purpose of travel and transportation is not a mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived."

Chicago Motor Coach vs. Chicago, 169 NE 22; Ligare vs. Chicago, 28 NE 934; Boon vs. Clark, 214 SSW 607; 25 Am.Jur. (1st) Highways Sect.163 "the right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business... is the usual and ordinary right of the Citizen, a right common to all." –

Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781 "Every Citizen has an unalienable RIGHT to make use of the public highways of the state; every Citizen has full freedom to travel from place to place in the enjoyment of life and liberty." People v. Nothaus, 147 Colo. 210. "No State government entity has the power to allow or deny passage on the highways, byways, nor waterways... transporting his vehicles and personal property for either recreation or business, but by being subject only to local regulation i.e., safety, caution, traffic lights, speed limits, etc. Travel is not a privilege requiring licensing, vehicle registration, or forced insurances."

Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 169 N.E. 22. "Traffic infractions are not a crime." People v. Battle "Persons faced with an unconstitutional licensing law which purports to require a license as a prerequisite to exercise of right... may ignore the law and engage with impunity in exercise of such right."

Shuttlesworth v. Birmingham 394 U.S. 147 (1969). U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary Copy and Share Freely YHVH.name 3 "The word 'operator' shall not include any person who solely transports his own property and who transports no persons or property for hire or compensation."

Statutes at Large California Chapter 412 p.83 "Highways are for the use of the traveling public, and all have the right to use them in a reasonable and proper manner; the use thereof is an inalienable right of every citizen." Escobedo v. State 35 C2d 870 in 8 Cal Jur 3d p.27 "RIGHT — A legal RIGHT, a constitutional RIGHT means a RIGHT protected by the law, by the constitution, but government does not create the idea of RIGHT or original RIGHTS; it acknowledges them. . . " Bouvier's Law Dictionary, 1914, p. 2961. "Those who have the right to do something cannot be licensed for what they already have right to do as such license would be meaningless."

City of Chicago v Collins 51 NE 907, 910. "A license means leave to do a thing which the licensor could prevent." Blatz Brewing Co. v. Collins, 160 P.2d 37, 39; 69 Cal. A. 2d 639. "The object of a license is to confer a right or power, which does not exist without it."

Payne v. Massey (19__) 196 SW 2nd 493, 145 Tex 273. "The court makes it clear that a license relates to qualifications to engage in profession, business, trade or calling; thus, when merely traveling without compensation or profit, outside of business enterprise or adventure with the corporate state, no license is required of the natural individual traveling for personal business, pleasure and transportation."

Wingfield v. Fielder 2d Ca. 3d 213 (1972). "If [state] officials construe a vague statute unconstitutionally, the citizen may take them at their word, and act on the assumption that the statute is void." –

Shuttlesworth v. Birmingham 394 U.S. 147 (1969). "With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority." Donnolly vs. Union Sewer Pipe Co., 184 US 540; Lafarier vs. Grand Trunk R.R. Co., 24 A. 848; O'Neil vs. Providence Amusement Co., 108 A. 887. "The right to travel (called the right of free ingress to other states, and egress from them) is so fundamental that it appears in the Articles of Confederation, which governed our society before the Constitution."

(Paul v. Virginia). "[T]he right to travel freely from State to State … is a right broadly assertable against private interference as well as governmental action. Like the right of association, it is a virtually unconditional personal right, guaranteed by the Constitution to us all." (U.S. Supreme Court,

Shapiro v. Thompson). EDGERTON, Chief Judge: "Iron curtains have no place in a free world. …'Undoubtedly the right of locomotion, the right to remove from one place to another according to inclination, is an attribute of personal liberty, and the right, ordinarily, of free transit from or through the territory of any State is a right secured by the Constitution.'

Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186. "Our nation has thrived on the principle that, outside areas of plainly harmful conduct, every American is left to shape his own life as he thinks best, do what he pleases, go where he pleases." Id., at 197.

Kent vs. Dulles see Vestal, Freedom of Movement, 41 Iowa L.Rev. 6, 13—14. "The validity of restrictions on the freedom of movement of particular individuals, both substantively and procedurally, is precisely the sort of matter that is the peculiar domain of the courts." Comment, 61 Yale L.J. at page 187. "a person detained for an investigatory stop can be questioned but is "not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest."Justice White, Hiibel "Automobiles have the right to use the highways of the State on an equal footing with other vehicles."

Cumberland Telephone. & Telegraph Co. v Yeiser 141 Kentucy 15. "Each citizen has the absolute right to choose for himself the mode of conveyance he desires, whether it be by wagon or carriage, by horse, motor or electric car, or by bicycle, or astride of a horse, subject to the sole condition that he will observe all those requirements that are known as the law of the road."

Swift v City of Topeka, 43 U.S. Supreme Court says No License Necessary To Drive Automobile On Public Highways/Streets No License Is Necessary Copy and Share Freely YHVH.name 4 Kansas 671, 674. The Supreme Court said in U.S. v Mersky (1960) 361 U.S. 431: An administrative regulation, of course, is not a "statute." A traveler on foot has the same right to use of the public highway as an automobile or any other vehicle.

Cecchi v. Lindsay, 75 Atl. 376, 377, 1 Boyce (Del.) 185. Automotive vehicles are lawful means of conveyance and have equal rights upon the streets with horses and carriages.

Chicago Coach Co. v. City of Chicago, 337 Ill. 200, 205; See also: Christy v. Elliot, 216i Ill. 31; Ward v. Meredith, 202 Ill. 66; Shinkle v. McCullough, 116 Ky. 960; Butler v. Cabe, 116 Ark. 26, 28-29. …automobiles are lawful vehicles and have equal rights on the highways with horses and carriages. Daily v. Maxwell, 133 S.W. 351, 354.

Matson v. Dawson, 178 N.W. 2d 588, 591. A farmer has the same right to the use of the highways of the state, whether on foot or in a motor vehicle, as any other citizen.

Draffin v. Massey, 92 S.E.2d 38, 42. Persons may lawfully ride in automobiles, as they may lawfully ride on bicycles. Doherty v. Ayer, 83 N.E. 677, 197 Mass. 241, 246;

Molway v. City of Chicago, 88 N.E. 485, 486, 239 Ill. 486; Smiley v. East St. Louis Ry. Co., 100 N.E. 157, 158. "A soldier's personal automobile is part of his 'household goods[.]'

U.S. v Bomar, C.A.5(Tex.), 8 F.3d 226, 235" 19A Words and Phrases – Permanent Edition (West) pocket part 94. "[I]t is a jury question whether ... an automobile ... is a motor vehicle[.]"

United States v Johnson, 718 F.2d 1317, 1324 (5th Cir. 1983). Other right to use an automobile cases: –

EDWARDS VS. CALIFORNIA, 314 U.S. 160 –

TWINING VS NEW JERSEY, 211 U.S. 78 – WILLIAMS VS. FEARS, 179 U.S. 270, AT 274 – CRANDALL VS. NEVADA, 6 WALL. 35, AT 43-44 – THE PASSENGER CASES, 7 HOWARD 287, AT 492 – U.S. VS. GUEST, 383 U.S. 745, AT 757-758 (1966) –

GRIFFIN VS. BRECKENRIDGE, 403 U.S. 88, AT 105-106 (1971) – CALIFANO VS. TORRES, 435 U.S. 1, AT 4, note 6 –

SHAPIRO VS. THOMPSON, 394 U.S. 618 (1969) – CALIFANO VS. AZNAVORIAN, 439 U.S. 170, AT 176 (1978) Look the above citations up in American Jurisprudence. Some citations may be paraphrased.